DISTRICT COURT OF THE VIRGIN ISLANDS
ST. THOMAS DIVISION

EUGENE SCALIA,
Secretary of Labor,
United States Department of Labor,

    *Plaintiff*,

        v.

WORLD FRESH MARKET, LLC
d/b/a Pueblo, and AHMAD ALKHATIB, as an individual,

    *Defendants.*

Complaint

Civil Action No. 3:20-cv-38

    Plaintiff, Eugene Scalia, Secretary of Labor, United States Department of Labor (the "Secretary"), by and through undersigned counsel, brings this action pursuant to Section 16(c) and Section 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, *et seq.*) ("the Act" or "the FLSA"), alleging that Defendants World Fresh Market, LLC d/b/a Pueblo, a limited liability company established in the United States Virgin Islands and individual Ahmad Alkhatib violated Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act; to recover back wages and liquidated damages; to enjoin acts and practices that violate the provisions of the FLSA; and to obtain other appropriate relief.

    Defendants are operators of a grocery store chain with two locations each in St. Thomas and St. Croix, United States Virgin Islands. After having been the subject of multiple investigations by the United States Department of Labor's Wage and Hour Division and advised of the Act's requirements, Defendants purposely and actively misclassified many of their hourly employees as "salaried" in a bid to flaunt the FLSA and to avoid paying them overtime premiums for long hours worked and as required by law. Defendants purport to characterize these misclassifications to

employees as "promotions," when in reality employees continue performing working substantially the same duties as they did as hourly employees, with little or no managerial responsibilities, for 72 hours per week or more without any overtime premiums. Through instituting this scheme to avoid their legal obligations, from at least May 14, 2017 through the present ("the relevant time period") Defendants have repeatedly violated the FLSA by failing to pay dozens of employees including security guards, maintenance workers, receiving workers, and janitors, the required overtime premiums. In furtherance of their scheme, Defendants failed to maintain adequate and accurate records of hours worked.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

2. Venue is proper in the United States District Court for the District of the Virgin Islands because a substantial part of the events and/or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

### The Parties

*Plaintiff*

3. Plaintiff Eugene Scalia, Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages sand is the proper plaintiff for this action.

*Defendants*

4.  Defendant World Fresh Market, LLC d/b/a Pueblo ("Pueblo"), together with Defendant Ahmad Alkhatib, employs security guards, maintenance workers, receiving workers, janitors, and meat, dairy, and other employees at four grocery stores located in Charlotte Amelie and Christiansted, United States Virgin Islands.

Corporate Defendant Pueblo

5.  Pueblo is a limited liability company organized under the laws of the United States Virgin Islands, having its principal place of business at 30 Subbase Road Veterans Drive, Charlotte Amalie, St. Thomas, United States Virgin Islands, where it is engaged in the business of operating grocery stores.

6.  Pueblo operates four grocery stores in the United States Virgin Islands. It operates two locations in Charlotte Amelie, St. Thomas, including one store located at 30 Subbase Road Veterans Drive ("Subbase store") and another on Rumer Drive ("Long Bay store"). Pueblo also operates two locations in Christiansted, St. Croix, including one store located at La Villa La Reine ("La Reine store") and another in the Golden Rock Shopping Center ("Golden Rock store").

7.  Pueblo is an employer of its security guards, maintenance workers, receiving workers, janitors, and meat, dairy, and other employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

Individual Defendant Ahmad Alkhatib

8.  Defendant Ahmad Alkhatib, an individual, is the sole founder and member of Pueblo.

9.  Ahmad Alkhatib interviews job applicants for employment at Pueblo.

10. Ahmad Alkhatib sets Pueblo's employees' rates of pay.

11. Ahmad Alkhatib determines the number of weekly hours Pueblo's employees work.

12. Ahmad Alkhatib determines which Pueblo employees are paid on a salary, rather than hourly basis.

13. Ahmad Alkhatib made the decision to pay some employees on a salary basis.

14. Ahmad Alkhatib made the decision not to pay certain employees an overtime premium for hours worked over 40 each workweek.

15. Ahmad Alkhatib actively oversees Pueblo's day-to-day operations.

16. Ahmad Alkhatib regularly speaks with Pueblo's District Manager Steven Bockino to discuss, approve, and give direction on Pueblo's employees' pay rates, methods of pay, overtime eligibility, weekly hours, and other personnel decisions.

17. Defendant Ahmad Alkhatib is an employer of Pueblo's employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

**Defendants are an Enterprise Engaged in Commerce**

18. The business activities of Pueblo, as described herein, are related and performed through unified operation or common control for a common business purpose and constitute an enterprise within the meaning of section 3(r) of the Act.

19. At all times relevant to this Complaint, Pueblo has had an annual gross volume of sales made or business done in an amount not less than $500,000.

20. Defendants have employed or are employing employees as security guards, maintenance workers, receiving workers, janitors, and meat, dairy, grocery workers, including

4

those employees listed in Exhibit A, as well as other employees, in the activities of an enterprise engaged in commerce or in the production of goods for commerce. Defendants' employees handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person, such as canned goods, produce, and other grocery items in addition to computers, security cameras, and other office supplies.

21. Defendants' employees have been employed in an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

### Defendants' Pay Practices

*Defendants underpaid many employees by misclassifying them as "managers" and paying them flat salaries, without the required premium for overtime hours worked*

22. From at least May 14, 2017 through the present, Defendants employed employees in several job categories including, but not limited to, security guards, maintenance workers, receiving workers, janitors, and meat and dairy employees.

23. During the relevant time period, Defendants misclassified many of their hourly employees as salaried "managers" even though they continued to perform the substantially same duties they had previously performed as hourly employees.

24. Defendants' systematic misclassification of the employees listed on Exhibit A and others currently unknown, without regard to their duties or pay, was nothing more than an attempt to avoid paying overtime to employees who had and continued to work considerably more than 40 hours per week. The duties actually performed by Defendants' salaried employees are facially non-management duties.

5

25. Security guards' duties include surveillance of Defendants' grocery stores in part through video feeds, prevention and detection of crime at the grocery stores, and patrol of the grocery stores.

26. Maintenance workers' duties include the performance of maintenance work including cleaning Defendants' grocery stores' floors, performance of plumbing work, repair of electrical general, refrigerators, fork lifts, and power jacks.

27. Defendants' receiving workers' duties include the unloading of boxes from the loading dock and receiving merchandise.

28. Meat department workers' duties include the preparation and cutting of meat and seafood products at Defendants' stores, as well as ordering meat and seafood products.

29. Dairy department workers' duties include stocking the shelves of Defendants' stores with dairy products, checking for expiration dates on stocked dairy products, and removing dairy products from shelves.

30. Janitorial personnel duties' include the cleanup of grocery aisles, bathrooms, and Defendants' grocery stores more generally.

31. The individuals listed on Exhibit A to this complaint are current or former employees of Defendants who performed work for Defendants as set forth in paragraphs 25 through 30, or other similar non-managerial duties.

32. Defendants' employees listed on Exhibit A do not interview, select or hire Defendants' employees.

33. Defendants' employees on Exhibit A do not set or adjust the rates of pay of Defendants' employees.

34. Defendants' employees listed on Exhibit A do not set or adjust the hours of work of Defendants' employees.

35. Defendants' employees listed on Exhibit A do not direct the work of Defendants' employees.

36. Defendants' employees listed on Exhibit A do not maintain production or sales records for use in supervision or control.

37. Defendants' employees listed on Exhibit A do not appraise employees' productivity and efficiency for the purpose of recommending promotions or other changes in status of Defendants' employees.

38. Defendants' employees listed on Exhibit A do not discipline Defendants' employees.

39. Defendants' employees listed on Exhibit A do not apportion work among Defendants' employees.

40. Defendants' employees listed on Exhibit A do not determine the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be stocked and sold by Defendants.

41. Defendants' employees listed on Exhibit A do not control Defendants' flow and distribution of materials or merchandise and supplies.

42. Defendants' employees listed on Exhibit A do not control Pueblo's budget.

43. Defendants' employees listed on Exhibit A do not monitor and implement Defendants' legal compliance measures.

44. Defendants' employees listed on Exhibit A do not customarily and regularly direct the work of two or more full-time employees or employees performing the equivalent of such full-time work.

45. Defendants' employees listed on Exhibit A do not fire other employees.

46. Defendants do not give particular weight to any recommendations made by their employees listed on Exhibit A with regard to the hiring, firing, advancement, promotion or any other change of status of Defendants' other employees.

47. Defendants did not assign their employees listed on Exhibit A to make any of the types of recommendations described in paragraph 46.

48. Defendants' employees listed on Exhibit A do not have primary duties in management at Pueblo.

*Defendants did not compute regular rates for their employees earning flat bi-weekly rates and failed to pay them an overtime premium for hours worked more than 40 per week.*

49. In most workweeks, Defendants paid their employees listed on Exhibit A flat bi-weekly amounts for a pre-determined number of weekly hours (i.e. 55, 66, or 72 hours per week depending on the employee) without regard to whether they worked more than forty hours in a workweek.

50. In so doing, Defendants did not compute hourly rates for their employees earning flat bi-weekly rates.

51. Defendants did not pay employees that Defendants characterize as salaried, such as those listed on Exhibit A, any overtime premiums for workweeks during which they worked more than forty hours per week.

52. From at least May 14, 2017 through the present Defendants paid approximately $325.00 to $1,050.00 per week to their employees listed on Exhibit A depending on the employee.

53. Defendants did not increase weekly pay to the employees listed on Exhibit A when the employees worked more than forty hours per week.

54. Defendants did not pay their employees listed on Exhibit A more than the flat weekly amounts when they worked more than the pre-determined number of weekly hours (as described in psaragraph 49).

55. Defendants did, however, pay their employees listed on Exhibit A less than the flat weekly amounts when they worked fewer than their allotted pre-determined number of weekly hours.

56. From at least May 14, 2017 through the present Defendants assigned their employees listed on Exhibit A to work between approximately 44 and 72 hours per week.

57. The employees listed on Exhibit A did in fact work for Defendants between approximately 44 and 72 hours per week.

58. For example, Defendants paid a security guard working at the La Reine location a flat amount of $750.00 for the week ending March 16, 2019 during which the employee worked 66 or more hours. Defendants failed to pay the security guard any overtime premium for hours worked over forty for that workweek.

59. By way of further example, Defendants paid a receiving employee working at the Golden Rocks location a weekly flat rate of $456.00 for the week ending July 14, 2018 during which the employee worked 49 or more hours. Defendants failed to pay the receiving employee any overtime premium for hours worked over forty for that workweek.

60. By way of further example, Defendants paid a maintenance employee working at the Sub Base location a weekly flat rate of $650.00 for the week ending January 12, 2019 during which the employee worked 50 or more hours. Defendants failed to pay the maintenance employee any overtime premium for hours worked over forty for that workweek.

61. By way of further example, Defendants paid a janitorial employee working at the Long Bay location a weekly flat rate of $427.50 for the week ending September 8, 2018 during which the employee worked 45 or more hours. Defendants failed to pay the janitorial employee any overtime premium for hours worked over forty for that workweek.

62. Defendants underpaid certain of their employees listed on Exhibit A each and every week during the relevant time period that they worked in excess of forty hours, by paying a flat rate, without any overtime premium, regardless of the amount of hours worked in excess of forty hours in a workweek.

*Defendants also underpaid other employees by paying them on an hourly basis without the required premium for overtime hours worked*

63. In addition to the employees paid a weekly flat rate, Defendants also pay certain other employees on an hourly basis but failed to pay overtime premiums for all hours worked in excess of 40 hours per week.

64. At all times during the relevant time period, Defendants have failed to record and pay for certain hours actually worked by some employees.

65. In so doing, Defendants failed to pay certain hourly employees a proper overtime premium for hours worked over 40 for certain workweeks.

66. For example, for the week ending February 23, 2019, Defendants paid an employee working as a bagger at the Golden Rocks location for 38.5 hours of work, at $10.50 per hour, for

a total of $404.25, an amount that did not include any overtime premium.  In fact, the employee worked more than 40 hours that week.

*     *     *

67. In all, Defendants failed to compensate at least 33 current and former employees during the relevant time period for work performed in workweeks longer than forty hours at a rate not less than one and one-half times the regular rate at which they were employed, as required by the Act.

### Defendants' Record Keeping Practices

*Defendants failed to keep records of hours worked for their misclassified employees, failed to compute and record regular hourly rates for their misclassified employees, and undercounted hours actually worked for hourly employees.*

68. During the relevant time period, Defendants have failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the regulations at 29 C.F.R. Part 516.

69. Instead, Defendants created false and inaccurate records by failing to record all of the hours actually worked by some hourly wage employees.

70. For example, Defendants did not create or maintain adequate and accurate records of the dates and times that some employees started and stopped work each day.

71. Defendants did not create or maintain adequate and accurate records of the total regular and overtime hours that some employees worked each workday.

72. Defendants did not create or maintain adequate and accurate records of the total regular and overtime hours that some employees worked each week.

73. Defendants did not create or maintain adequate and accurate records of regular hourly rates of pay for many of their employees.

74. Further, Defendants failed to create and maintain any records of hours actually worked by their misclassified employees, including overtime hours actually worked.

75. In so doing, Defendants further failed to compute the regular hourly rates of the misclassified employees each week.

### Defendants' Violations of the Act were Willful

76. Defendants have long known and understood the overtime and record-keeping requirements of the FLSA.

77. Indeed, the United States Wage and Hour Division previously conducted investigations of Defendants in 2005 and 2010, each time finding FLSA violations and informing Defendants of those findings.

78. The Wage and Hour Division informed Defendants of the requirements of the Act as part of each investigation.

79. After each investigation, Defendants agreed to comply prospectively with the FLSA.

80. Despite their promises to comply and their understanding of the Act's requirements to pay overtime, Defendants disregarded their obligations under the FLSA, misclassified the employees listed on Exhibit A as exempt in bid to avoid paying overtime premiums, and created false and misleading records.

81. As described herein, for example, the duties performed by Defendants' employees listed in Exhibit A do not meet the requirements necessary to exempt salaried employees from the FLSA's overtime requirements.

82. By way of further examples, and as described herein, Defendants failed to pay certain of their employees the minimum salary required for the exemption to apply, further illustrating their reckless disregard of their FLSA obligations.

## FIRST CAUSE OF ACTION

**Violation of Sections 7(a) and 15(a)(2) of the FLSA, Failure to Pay Overtime**

83. The Secretary incorporates by reference and realleges the allegations in paragraphs 1 through 82.

84. From at least May 14, 2017 through the present, Defendants have willfully and repeatedly violated Sections 7 and 15(a)(2) of the Act by employing at least 33 current and former employees in an enterprise engaged in commerce or in the production of goods for commerce, for workweeks longer than forty hours without compensating the employees at a rate not less than one and one-half the regular rate at which they were employed.

85. Accordingly, Defendants are liable for unpaid overtime compensation and an equal amount in liquidated damages pursuant to Section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid overtime compensation and prejudgment interest on said unpaid overtime compensation under Section 17 of the Act.

## SECOND CAUSE OF ACTION

**Violation of Sections 11(c) and 15(a)(5) of the FLSA, Recordkeeping**

86. The Secretary incorporates by reference and realleges the allegations in paragraphs 1 through 85.

87. From at least May 14, 2017 through the present Defendants have willfully and repeatedly violated the provisions of sections 11(c) and 15(a)(5) of the Act, in that Defendants

failed to make, keep, and/or preserve adequate and accurate records, including regular hourly rate of pay and total premium pay for overtime hours, as prescribed by the regulations issued and found at 29 CFR Part 516.

## RELIEF REQUESTED

**WHEREFORE**, cause having been shown, Plaintiff respectfully prays for judgment against Defendants providing the following relief:

(1)     An injunction issued pursuant to Section 17 of the Act permanently restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from violating the provisions of Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act;

(2)     An order pursuant to Section 16(c) of the Act finding Defendants liable for unpaid overtime compensation found due Defendants' employees listed on the attached Exhibit A;

(3)     An order pursuant to Section 16(c) of the Act finding Defendants liable for an equal amount of liquidated damages (additional overtime compensation and liquidated damages may be owed to certain employees presently unknown to Plaintiff for the period covered by this Complaint); or in the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding the amount of unpaid overtime compensation found due Defendants' employees and prejudgment interest computed at the underpayment rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621;

(4)     An order compelling Defendants to reimburse the Secretary for the costs of this action; and

    (5)    An order granting such other relief as the Court may deem necessary or appropriate.

DATED:    May 14, 2020
              New York, New York

                        KATE S. O'SCANNLAIN
                        Solicitor of Labor

                        JEFFREY S. ROGOFF
                        Regional Solicitor

                        <u>s/ David J. Rutenberg</u>
                        DAVID J. RUTENBERG
                        Trial Attorney

                        U.S. Department of Labor
                        Office of the Solicitor
                        201 Varick Street, Room 983
                        New York, NY 10014
                        Tel: 646.264.3686
                        Fax: 646.264.3660
                        Rutenberg.david.j@dol.gov

                        Attorneys for Plaintiff Secretary of Labor
                        Eugene Scalia

Certificate of Service

I certify that on May 14, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and further certify that I have e-mailed the foregoing to:

>Michael L. Sheesley
>Counsel for Defendants
>Michael L. Sheesley, P.C.
>P.O. Box 307728
>St. Thomas, VI 00803
>michael@sheesley-law.com

s/David J. Rutenberg<br>David J. Rutenberg